# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 08-02655-TLM** |
| LAWRENCE & ASSOC., LLC, | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

On November 21, 2008, Lawrence & Associates, LLC, an Idaho limited

liability company ("Lawrence LLC"), filed a petition for relief commencing a

chapter 7 case, No. 08-02655-TLM, before this Court.  Doc. No. 1.[1]

On January 9, 2009, Rachel Lawrence and Randy Woodman (collectively

"Debtors") filed a joint petition for chapter 7 relief in the Bankruptcy Court for the

Eastern District of New York, commencing Case No. 1-09-40141-jf.[2]

Boise Island Park, LLC ("BIP"), Zachary Gingg, James and Debra Murray,

_____

[1]  Pleadings in the instant chapter 7, *In re Lawrence & Assoc., LLC*, Case No. 08-02655-
TLM, are identified by "Doc. No."

[2]  Selected portions of the docket and record in Debtors' chapter 7 case are included in
the exhibits admitted at hearing.  However, the Court also takes judicial notice of the files in Case
No. 1-09-40141-jf under Fed. R. Evid. 201.  In the context of this litigation, certain of such
documents therein are also subject to treatment as admissions of Debtors.  *See* Fed. R. Evid.
801(d).

MEMORANDUM OF DECISION - 1

and Becky Haines (collectively "Movants") filed a motion requesting that this

Court transfer Debtors' individual bankruptcy case to this District pursuant to 28

U.S.C. § 1412 and Fed. R. Bankr. P. 1014(b).  Doc. No. 13 ("Motion").[3]

The Court has carefully considered the evidence presented at hearing.[4]  It

has also evaluated the parties' legal arguments, and other relevant authorities.  The

Court determines that the Motion will be granted.  The following constitute this

Court's findings and conclusions on the contested matter.  Fed. R. Bankr. P. 7052,

9014.

**BACKGROUND AND FACTS**

    **A.**    **Debtors' businesses and the Lawrence LLC bankruptcy**

Prior to September, 2008, Debtors resided and did business in Boise, Idaho.

Lawrence LLC was one of the entities under or through which Debtors conducted

their business activities.  Lawrence LLC had two members: Revolution 1.5 LLC

("Revolution") and Stacy McBain – with ownership interests of 55% and 45%,

respectively.  Exs. 109, 119.  Revolution was also an Idaho limited liability

company, and its members were Woodman and Lawrence.  Exs. 110, 119.

According to Woodman, Lawrence LLC managed approximately 600 real

---

[3]  A duplicate motion was filed as Doc. No. 14.  For simplicity, the Court refers only to one Motion.

[4]  All findings based upon or involving testimony incorporate the Court's evaluation of the credibility of the witness involved and the weight to be given his or her testimony.

MEMORANDUM OF DECISION - 2

properties located in Idaho. The company found tenants for these properties, collected rents and security deposits, and performed or scheduled maintenance and repairs. It employed 25 to 30 employees at any given time.

Woodman testified that Lawrence LLC deposited all rents, security deposits and other funds the company collected into two bank accounts, and that Lawrence LLC did not maintain separate bank accounts for each property or client. He further testified that both Debtors were authorized to withdraw and control the funds in the Lawrence LLC bank accounts. Lawrence LLC made monthly payments up to $6,500 to Revolution.[5] According to Woodman, Revolution used some of these funds to pay Lawrence LLC's operating expenses, but some funds were also paid to Debtors as income.[6]

On cross-examination, Woodman conceded that Lawrence LLC and its owners and operators are currently under investigation by the Boise City Police Department for the alleged embezzlement of rental payments and security deposits belonging to that business' clients.[7]

---

[5] *See also* Doc. No. 1 at statement of financial affairs ("SOFA"), question 23 ("Withdrawals from a partnership or distributions by a corporation").

[6] The SOFA for Lawrence LLC reflects 2008 business income of $396,000 and 2007 business income of $748,000. Doc. No. 1 at 99. Lawrence LLC made numerous payments to Revolution in the year prior to filing. *Id.* at 105-06. The SOFA Debtors filed in New York indicated $30,000 in income personally received from Lawrence LLC and Idaho Real Estate Recyclers LLC in 2008, but nothing from Revolution, contrary to Woodman's testimony. Ex. 3.

[7] The automatic stay arising under § 362(a) upon Debtors' filing does not impede that
(continued...)

MEMORANDUM OF DECISION - 3

Debtors were involved with a number of other business entities as well. For example, through Revolution, they held the majority ownership interest in Idaho Real Estate Recyclers LLC ("Recyclers"). Ex. 119.[8]  Recyclers itself was a member of other limited liability companies, including 925 N. 9th LLC, 1107 Washington LLC, and Tubac LLC. *Id*.  Generally speaking, these businesses involved real property investments, including purchasing properties for renovation and resale.[9]

Lawrence LLC ceased operations in August 2008.  Lawrence LLC's November 21 bankruptcy case was filed, and noticed to creditors, as a "no asset" chapter 7 case.  Thus, creditors were advised not to file proofs of claim.

### B.    Debtors' individual bankruptcy case

Woodman testified that Debtors moved from Boise, Idaho to Brooklyn, New York, in September, 2008.[10]  Woodman testified the move was motivated by

---

[7](...continued)
investigation or a prosecution thereon.  *See* § 362(b)(1) (providing an exception to the stay for "the commencement or continuation of a criminal action or proceeding against the debtor").

[8]  Exhibit 119 was an organizational "flow chart" produced by Debtors in discovery.

[9]  Debtors also owned interests in a number of other limited liability companies (Paddle Properties LLC, 1604 Bannock LLC, Laab LLC) according to their schedule B.  *See* Ex. 3.  These are in addition to their ownership interests in Lawrence LLC, Revolution, Recyclers, Tubac LLC, 1107 Washington LLC and 925 North 9th LLC.  Paddle Properties LLC owned a 4-family dwelling in Boise, according to Debtors' SOFA.  *Id.*

[10]  Debtors' SOFA indicates they resided at 6122 Elmer St. in Boise from July, 2005 to June, 2008, and at 1107 Washington St., #2, from June, 2008 to September, 2008.  Ex. 3.  The
(continued...)

MEMORANDUM OF DECISION - 4

Debtors' desire to be near family for emotional and financial support.  Woodman

further testified that, after Lawrence LLC notified its clients that it was going out

of business, Debtors received threats from individuals they believed were former

clients, and he no longer felt safe in Idaho.

On their New York bankruptcy petition, Debtors affirmed they were

domiciled or resided in that district for the greater portion of the 180 days

preceding the petition than in any other district.  *See* 28 U.S.C. § 1408(1).

Debtors' bankruptcy was also filed, and noticed to creditors, as a "no asset"

chapter 7 case, and creditors were advised not to file claims.

Debtors' New York petition lists the Lawrence LLC bankruptcy as a

"pending bankruptcy case filed by any spouse, partner or affiliate" and indicates

"Debtors have controlling interest" as a way of explaining the nature of their

relationship to Lawrence LLC.   Ex. 3 at 2.

The only scheduled real property in Debtors' case is a "one family

dwelling" valued at $200,000 and located at 6122 Elmer Street in Boise, Idaho.  *Id.*

at sched. A.  The three secured claims against the property total $225,266.27.  *Id.*

at sched. D.  American Home Mortgage Servicing, Inc. ("AHMSI") of Texas

moved for relief from the automatic stay in April, 2009, to enforce its rights as the

---

[10] (...continued)
Elmer Street property is listed on Debtors' schedule A as owned by Debtors.  *Id.* (stating interest
is "tenancy by the entirety").

MEMORANDUM OF DECISION - 5

first mortgage lienholder in the Elmer Property.  That motion for stay relief is pending, with a hearing presently set for July 14.

In their SOFA, Debtors indicate they transferred in January, 2009, a 4-family dwelling at 900-908 N. 11th St. in Boise, Idaho to Paddle Properties LLC. *Id.* at SOFA, question 10.[11]  On March 9, the chapter 7 trustee assigned to Debtors' bankruptcy case, Alan Nisselson ("Trustee"), filed an adversary complaint seeking the authority to sell the property on 11th Street under § 363(h).  *See* Ex. 5, Adv. No. 1-09-01056-jf.[12]  Trustee contends the property is jointly owned by Debtors (through their membership in Paddle Properties LLC[13]) and two other entities, Kingpin, LLC and Woodman-Thoren, LLC.[14]

The adversary proceeding is pending, with the Thorens having filed a hand-written *pro se* answer.[15]  A pretrial conference has been set for August 13, 2009.

Additionally, the docket of the New York case reflects that, pursuant to

---

[11]  This disclosure also indicates Debtors received no value in return for the transfer.  *Id.*

[12]  The Court has reviewed the actual complaint, and other pleadings of record in the New York court, to determine precisely what is alleged and at issue.

[13]  Debtors' schedule B indicated they owned, at filing, 33% of Paddle Properties LLC. Ex. 3 at 11.

[14]  The pleadings allege Kingpin, LLC's sole member is Chris Callor, who lives at the 11th Street property, and that the members of Woodman-Thoren, LLC, are David and Ellen Thoren of Sacramento, California.

[15]  This was docketed as an answer for both Kingpin LLC and Woodman-Thoren LLC, though its text appears to suggest it relates only to the Thorens and their LLC.

MEMORANDUM OF DECISION - 6

stipulation, an order was entered extending until July 13, the deadline for creditors, the Trustee, or the United States Trustee to file complaints objecting to Debtors' discharge or to the dischargeability of any debts, or to object to Debtors' claimed exemptions.  Case No. 1-09-40141-jf at Doc. 10.[16]

### C.    The Motion

On February 20, 2009, BIP and Gingg[17] filed the present Motion to transfer Debtors' bankruptcy case to Idaho.  Neither BIP nor Gingg is listed as a creditor in the Debtors' case.  They are, however, scheduled jointly as a nonpriority unsecured creditor with a claim of $28,745 in the Lawrence LLC bankruptcy. Doc. No. 1 at 24.  BIP is also a plaintiff in a civil suit filed on October 3, 2008 against Lawrence LLC, Revolution, and Debtors in the Fourth Judicial District of the State of Idaho.  Doc. No. 13, attach. 1.  That breach of contract, conversion and racketeering action seeks a money judgment for $115,740.[18]

Becky Haines and James and Debra Murray joined in the Motion.  Like BIP

---

[16]  It also appears from the docket that the § 341(a) meeting of creditors and examination of Debtors was commenced on February 10, 2009, and last continued to April 1.

[17]  Gingg apparently is associated with BIP, though his capacity in that entity was never established.

[18]  By virtue of § 101(10), defining "creditor" as an entity that has a claim, and § 101(5)(A) defining "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," BIP and Gingg are "creditors" of Debtors.  In the discussion that follows, the Court will occasionally characterize BIP, Gingg and others similarly situated as "prospective creditors" of Debtors, simply to distinguish them from the scheduled and undisputed creditors in Debtors' New York filing.

and Gingg, neither Haines nor the Murrays are scheduled as creditors in Debtors'

bankruptcy.  They all, however, believe Debtors are personally liable to them.

Lawrence LLC objected to the Motion.  *See* Doc. No 17.  The Court

determined at an earlier hearing that Lawrence LLC had no cognizable interest in

or standing regarding the Motion, which was aimed at Debtors individually.

Lawrence LLC's counsel made no more appearances.

The Motion generated an objection from the Trustee.  *See* Doc. Nos. 22, 30.

The first was in the form of a letter.  While the second was properly in the form of

a pleading, it was not filed through counsel admitted to appear in this Court nor

was any *pro hace vice* appearance authorized.  *See generally* LBR 9010.1.

However, the Court understands the Trustee is also a lawyer and a member of the

same firm, and therefore treats the objection he signed, Doc. No. 30, as a *pro se*

submission.  Though the document was considered, the Trustee made no

appearance at any hearings.[19]

The Motion was also objected to by Debtors, appearing through Idaho

---

[19]   A number of individuals sent letters to the Court regarding the Motion, which letters
have likewise been made part of the Court's file.  *See* Doc. Nos. 20 (Kimberly Axelrod), 21
(Thomas and Susan Weber), 23 (James and Debra Murray), 24 (Robert Felter), 25 (Tim
McMullen), and 26 (Michael Deming), and 29 (Frank and Suzanne Rowland).  Most either
"objected" to Debtors being able to obtain bankruptcy relief or offered support to BIP's venue-
transfer Motion.  *Id.* (Some letters demonstrate a mistaken belief that the Motion sought to move
the Lawrence LLC case to New York or reflect similar sorts of misunderstandings).  A number of
individuals appeared at the early hearings on the Motion, and several observed without noting an
appearance.

MEMORANDUM OF DECISION - 8

counsel.  *See* Doc. No. 53.

The Court's preliminary hearings on the Motion in March, 2009, made clear that an evidentiary hearing was required.  *See* Fed. R. Bankr. P. 9014(d). That hearing was set for and held on June 9.  At the hearing, numerous exhibits were admitted and Movants called Becky Haines, Victor Hohne, James Murray, and Zachary Gingg to testify.  Movants also called Woodman and, after Movants rested, Debtors called Woodman.[20]

**DISCUSSION AND DISPOSITION**

**A.    Standards and burden**

Section 1408 of Title 28, U.S. Code provides that venue for a bankruptcy case is proper in the district court for the district –

> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
>
> (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

---

[20]    *See* Doc. No. 56 (minute entry).  Movants served a subpoena on Rachel Lawrence commanding her appearance at the June 9 hearing, but it was withdrawn pursuant to an agreement between Movants and Debtors.  Doc. Nos. 23, 55.

MEMORANDUM OF DECISION - 9

A bankruptcy case may be transferred to a district court for another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The Bankruptcy Rules proscribe the procedures for transferring a bankruptcy case. Rule 1014(b) governs the transfer when petitions involving the same debtor or related debtors are filed in different courts and provides:

> If petitions commencing cases under the Code *are filed in different districts by* or against (1) the same debtor, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) *a debtor and an affiliate*, *on motion filed in the district in which the petition filed first is pending* and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the court may determine, *in the interest of justice or for the convenience of the parties*, the district or districts in which the case or cases should proceed.  Except as otherwise ordered by the court in the district in which the petition filed first is pending, the proceedings on the other petitions shall be stayed by the courts in which they have been filed until the determination is made.

Fed. R. Bankr. P. 1014(b) (emphasis added).  Each of the emphasized portions of the rule are material here.

The party urging a change of venue has the burden of proving, by the preponderance of the evidence, that the transfer is warranted.  *In re Custom Builders of Steamboat Inc.*, 349 B.R. 39, 42 (Bankr. D. Idaho 2005).  Courts have broad discretion in deciding motions under 28 U.S.C. § 1412, and a request for a transfer must be reviewed on a case-by-case basis.  *Id.* (citing *Waldron v. Skamser (In re Skamser)*, 04.2 I.B.C.R. 70, 70 (Bankr. D. Idaho 2004)).  If the evidence

MEMORANDUM OF DECISION - 10

does not "weigh decidedly in either party's favor, the debtor's choice of forum in filing the underlying bankruptcy case is entitled to deference." *Id*.

### B.   Elements

#### 1.   ". . . petitions . . . filed in different districts"

Lawrence LLC filed in the District of Idaho on November 21, 2008, and Debtors filed in the Eastern District of New York on January 9, 2009. Movants appeared, initially, to dispute the propriety of Debtors' filing under 28 U.S.C. § 1408(1), questioning the duration of their required residency in New York. However, they abandoned that issue. *See also* discussion at note 10 *supra*. Thus the first element, that two petitions be filed in different districts, is met.

#### 2.   ". . . by . . . a debtor and an affiliate"

Movants ask this Court to order the transfer of Debtors' bankruptcy case to this District on the basis that Debtors are an "affiliate" of Lawrence LLC. If they are not affiliates, the Court has no power to transfer Debtors' case, as none of the other three types of filings in Rule 1014(b) are implicated. *See also In re Reichmann Petroleum Corp.*, 364 B.R. 916 (Bankr. E.D. Tex. 2007).

An affiliate is defined by § 101(2) of the Bankruptcy Code as:

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities—

   (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or

MEMORANDUM OF DECISION - 11

(ii) solely to secure a debt, if such entity has not in fact exercised such power to vote.

11 U.S.C. § 101(2)(A).

Debtors did not strongly contest the assertion that they are an affiliate of Lawrence LLC. The evidence established Debtors were the only two members of Revolution and they controlled that entity which, in turn, owned a controlling interest in Lawrence LLC.[21]

The Court finds and concludes Debtors' ownership and control of Lawrence LLC, though indirect, meets the requirements of § 101(2)(A). The cases are by "a debtor and an affiliate." Fed. R. Bankr. P. 1014(b).

### 3. ". . . on motion filed in the district in which the petition first filed is pending"

The Rule designates which of the interested courts is to hear and decide the venue transfer issue. That is the court in the district where the first filed of the two subject cases is pending. The Motion is properly brought before this Court.

---

[21] According to question 21 on the SOFA ("Current Partners, Officers, Directors and Shareholders") in the Lawrence LLC bankruptcy, Revolution owned 66.6% of Lawrence LLC. Doc. No. 1. Exhibit 119, however, shows Revolution's ownership of Lawrence LLC at 55%. In either case, Revolution held the majority interest in Lawrence LLC.

MEMORANDUM OF DECISION - 12

4.     ". . . in the interest of justice or for the convenience of the
parties"

In order for a court to transfer the case, a movant must establish the transfer

will serve the interest of justice or the convenience of the parties.   28 U.S.C.

§ 1412; Fed. R. Bankr. P. 1014(b).  The factors to be considered or evaluated

include:

    1.  The proximity of creditors of every kind to the court;

    2.  The proximity of the bankruptcy (debtor) to the court;

    3.  The proximity of the witnesses necessary to the administration of the
    estate;

    4.  The location of the assets;

    5.  The economic administration of the estate; and

    6.  The necessity for ancillary administration.

*See TVI, Inc. v. Russo III (In re Russo III)*, 2002 WL 33939735, at *2 (Bankr. D.

Idaho Apr. 19, 2002) (citing *In re Brooks Truck Line, Inc*., 97.4 I.B.C.R. 113, 113

(Bankr. D. Idaho 1997)).

The Court must exercise its discretion in weighing and evaluating these

factors, and certain factors may be deemed more important than others.  *In re*

*Russo III*, 2002 WL 33939735, at *3.  That is to say, like so many "factor-driven"

MEMORANDUM OF DECISION - 13

analyses in bankruptcy law, the Court needs to do more than total supporting and opposing factors. *In re Stella*, 2006 WL 2433443, at *4, 06.3 I.B.C.R. 67, 69 (Bankr. D. Idaho June 28, 2006) ("[S]uch lists are capable of being misconstrued as inviting arithmetic reasoning [but] are merely a framework for analysis and not a scorecard. In any given case, one factor may so outweigh the others as to be dispositive.") (quoting *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 24-25 (9th Cir. BAP 2003)).

Movants' evidence and argument focused primarily on the physical proximity of creditors to this Court.[22] Movants contend that transferring the case to Idaho will benefit Debtors' scheduled creditors as well as numerous prospective creditors because, in short, it is closer.

In many ways, the distinction between scheduled creditors and prospective creditors is artificial and unhelpful. First, as discussed, all are "creditors" as that term is defined in the Code. *See* § 101(5)(A), § 101(10). Second, the "interests" of all these creditors must be identified and evaluated.

---

[22]  Not all of it related to physical location of creditors. The Court notes that it has considered carefully the testimony of Haines, who testified regarding a $60,000 investment in 1107 Washington LLC, concerning a Boise real estate project; Hohne, who testified about a claim for $21,000 of undelivered rental payments and security deposits; Gingg's similar testimony about $54,000 in unpaid rents and security deposits; and Murray, who testified not only of his $55,000 invested with 929 N. 9th LLC (another Boise real estate project) but of $42,600 invested with Tubac LLC for a specific and limited purpose (purchase of certain real property in Arizona) but which, after that purchase fell, was never returned and, in fact, loaned "by Woodman" from Tubac LLC to Lawrence LLC. The testimony was, ultimately, more probative to factors other than proximity of the individuals' residence.

MEMORANDUM OF DECISION - 14

One interest, obviously, is the ability to participate in the case if a creditor so desires.  The first manner in which that typically occurs, is in attending the § 341(a) meeting and the debtor's examination under oath required by § 343. Those meetings have occurred in both cases.  The docket of the Debtors' case does not indicate who appeared at the meeting(s) held in New York.  In Idaho, at the Lawrence LLC § 341(a) meeting on December 23, 2008, a number of creditors and parties in interest appeared personally or through counsel.  *See* Doc. No. 11 (trustee's minutes of § 341(a) meeting).  Transfer of venue would have no apparent impact in regard to this interest as the meetings are *fait accompli*.

The next manner of participation in a case by creditors relates to the filing of proofs of claim, and the related possibility of litigation in determining the allowance of such claims.  However, Lawrence LLC's case and Debtors' case are both "no asset" chapter 7 cases.  No claims have been requested.  The factor therefore appears to be of little consequence.  Should assets be discovered and creditors be advised of an opportunity to file claims, there may be slightly more heft to the factor.  However, claims are generally filed by mail, a nominal effort and one that does not either favor or disfavor transfer of venue.  It would be unduly speculative for the Court to consider what magnitude of claim litigation (as opposed to dischargeability litigation, discussed below), might arise.

There has been some "creditor activity" in Debtors' case.  The Court

MEMORANDUM OF DECISION - 15

already noted that AHMSI of Texas, the alleged holder of a real estate secured

claim, moved for stay relief in Debtors' case.  It appears, from the documents of

record, that relief has not yet been entered.  However, nothing in that record or the

evidence put before this Court at hearing suggests this creditor's ability to

participate would be significantly altered by a change of venue.  Mortgagees of

this sort regularly appear in bankruptcy courts throughout the country to seek stay

relief.  Other than a change in the counsel hired to obtain the stay relief order, the

difference between Idaho and New York is minimal.  Indeed, if stay relief is

gained, this creditor would need to pursue its state law remedies in Idaho and

under Idaho law, as the subject real property is located in Boise.

There are five scheduled unsecured creditors in Debtors' case with priority

claims totaling almost $58,000.  *See* Ex. 3. at sched. E.  But nearly all of this

amount is owed to the Internal Revenue Service ("IRS").  The venue of the case

would not impact this federal agency materially; it appears in bankruptcy courts in

every district.

The Court has also considered the extended arguments of the parties, which

focused on the number of unsecured creditors scheduled in both cases, and the

mailing addresses listed for such creditors, and the amounts of their respective

claims.  But this process leads both parties to false conclusions.  In these no asset

cases, with § 341(a) meetings that have already occurred, and with dockets

indicating few other pending matters, the "location" of the creditors, in the abstract

MEMORANDUM OF DECISION - 16

or as counter-weighted with the size (dollar amount) of their claims, means little.

To the extent creditors' proximity is relevant, it appears to the Court that the "prospective" creditors – those with documented or undisputed claims against one of the several LLC's through which Debtors did business, but with disputed and unliquidated claims against Debtors personally – will be the most involved and the most impacted.

Movants contend Debtors might be personally liable to them and other creditors, including investors, employees, vendors and customers. Such liability, they claim, stems from Debtors' alleged misconduct while serving as members, owners, or managers of their various business entities. BIP had, prior to the Lawrence LLC bankruptcy, commenced litigation in Idaho against Debtors on such theories.

With the bankruptcy overlay now applied, such litigation would appear to be in the nature of § 523(a) litigation, seeking to establish that Debtors' owe a personal debt to a plaintiff and such debt should be, for one of the several grounds provided under the Code, held nondishargeable.[23]

The weighing of factors on this subject tilts in favor of Movants. They and similarly situated parties doing business with Debtors' multiple limited liability

---

[23]   The Court does not discount the possibility of § 727(a) litigation, which of course exists in every bankruptcy case. However, little discussion on the subject occurred at hearing. The Court notes, though, that the July 13 extension of deadline ordered by the New York Bankruptcy Court applies to § 727(a) actions as well as § 523(a) actions.

MEMORANDUM OF DECISION - 17

companies are predominantly local.  While some do not live in Boise or its surrounding area, it appears most do.

All creditors must travel to some degree to participate in litigation. Those creditors living outside Idaho would be required to travel by car or plane to Boise. But, should the case stay in New York, they would be required to travel there as well.  Which venue imposes more of a burden depends entirely on how far east, or how close to air travel hubs, they live.

The Court recognizes that another factor is the proximity of the Debtors. There is little dispute that a burden would be imposed on Debtors if required to participate in litigation in Boise rather than Brooklyn.  The parties spoke at great length on the issue, and little purpose is served to repeat the points and counterpoints here.  However, the Court has given careful consideration to the arguments of Debtors' counsel.

At bottom, the factor of proximity of the Debtors does not outweigh the other relevant factors, including those already noted above, and those addressed below.  Among other things, history plays a role.  Under the evidence, Debtors conducted business for an extended period of time in Idaho and, particularly, the Boise area, through numerous Idaho LLCs.  They solicited investments, and they acquired several Boise-area properties.[24]  The entity that filed for relief in Idaho,

---

[24]  There was some evidence that not all properties were "local."  For example, Murray's investment in Tubac LLC was to acquire Arizona real property.  However, as mentioned above,

(continued...)

MEMORANDUM OF DECISION - 18

Lawrence LLC, had dozens of employees and managed hundreds of properties. The income stream, as reflected on the SOFA, was significant.  The fact that Debtors departed Boise soon after shuttering Lawrence LLC, even if their reason for the move is as they contend, does not establish a nexus with New York more significant than that with Idaho.

As with the location or proximity of creditors, noted above, the location of witnesses or others necessary to administer the estate supports transfer.  That the businesses were conducted to a significant degree in Idaho, and Idaho banks and other service providers were used, is material.  In considering the litigation in or in connection with the case that is likely to arise, the questioned conduct appears to have occurred here and the majority of the evidence and prospective witnesses and creditors are located here.

The final relevant factors are the location of assets and the economic administration of the estate.

The only assets as yet identified in the Debtors' case for administration, at least insofar as the evidence before this Court suggests, is the real property at 900-908 N. 11th Street in Boise (and Debtors' related interest in Paddle Properties LLC) that is the subject of Trustee's § 363(h) adversary proceeding, and the property on Elmer Street in Boise that is the subject of the stay lift motion.  The

---

[24] (...continued)
Murray testified that when that transaction failed, the funds were transferred to Lawrence LLC without his consent.

MEMORANDUM OF DECISION - 19

Court appreciates that investigation and administration of the estate may unearth other assets, including potential recoveries through a trustee's exercise of the myriad powers provided under the Code.  But the factor of location of the assets seemingly favors transfer.

In considering economical administration, the Court appreciates that Trustee and his counsel have incurred expenses in administering Debtors' case from January 9 to date.  However, if the estate has assets for distribution, those expenses can be considered along with any of an Idaho trustee or his professionals.  And the benefit of Trustee's labors to date will not be lost, though there will be a need to convey information to a successor trustee.

In conclusion, after considering carefully the evidence as well as the arguments of the parties, and after exercising its discretion in weighing and evaluating the factors established by the case law, this Court concludes transfer of venue of Debtors' case to the District of Idaho furthers the interests of justice and the convenience of the parties.[25]

**CONCLUSION**

For the reasons stated, the Motion, Doc. No. 13, will be granted, and the venue of Debtors' bankruptcy case, No. 1-09-40141-jf, before the Bankruptcy Court for the Eastern District of New York, will be ordered transferred to the

---

[25] For clarity, this would include transfer of the adversary proceeding related to that case, Adv. Proc. No. 1-09-01056-jf.

MEMORANDUM OF DECISION - 20

District of Idaho.  The Court will enter an appropriate order.

DATED: July 2, 2009



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 21

## <u>CERTIFICATE OF SERVICE</u>

A "notice of entry" of this Decision, Order and/or Judgment has been served on Registered Participants as reflected by the Notice of Electronic Filing. A copy of the Decision, Order and/or Judgment has also been provided to non-registered participants by first class mail addressed to:

Glenn S. Kessler
Attorney for Randy and Rachel Lawrence
32 Court Street
Suite 704
Brooklyn, NY 11201

Alan Nisselson
Chapter 7 Trustee
Windels Marx Lane & Mittendorf LLP
156 W. 56th Street
New York, NY 10019-3803

A copy of the Decision, Order and/or Judgment has also been provided to a non-registered participant by e-mail addressed to:

Hon. Jerome Feller
jerome_feller@nyeb.uscourts.gov

Case No. 08-02655-TLM

Dated: July 2, 2009


_____/s/_____
Beth Taylor
Law Clerk to Chief Judge Myers

MEMORANDUM OF DECISION - 22